J-S12002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: V.E.W.-D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2305 EDA 2020 |

Appeal from the Order Entered November 12, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-000869-2018

BEFORE:  LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED:  JUNE 4, 2021**

M.W. (Mother) appeals from the order, entered in the Court of Common Pleas of Philadelphia County, involuntarily terminating her parental rights to her minor daughter, V.E.W.-D. (born 08/15) (Child).  Upon careful review, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> [The Department of Human Services (DHS)] initially became involved with this family after a General Protective Services [(GPS)] report was received on September 23, 2015[,] alleging that Mother was failing to properly care for [her newborn] Child.  Specifically, the report alleged that Child missed medical appointments and was taken to daycare with diaper rashes.[1]

---

[1] More specifically, the report alleged that Mother refused to take Child for necessary medical care, including for ongoing nasal congestion and "swollen, cracked, and bleeding" genitals.  The report further alleged, *inter alia*, that

*(Footnote Continued Next Page)*

Subsequently, a safety plan was implemented. DHS received an additional GPS report [five days later,] on September 28, 2015[,] alleging that Mother was swinging around a knife during a domestic violence episode while Child was in the vicinity and fled with [] Child. Mother and Child were located on October 1, 2015[,] and an Order of Protective Custody [(OPC)] was obtained. On October 9, 2015, [] Child was adjudicated dependent and has remained continuously in care since the adjudicatory hearing.

On October 30, 2018, DHS filed petitions to involuntarily terminate Mother's parental rights to [] Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b) and to change [] Child's permanency goal to adoption. Th[e co]urt conducted a bifurcated combined termination and goal change hearing [(TPR hearing)] on March 20, 2019 and November 12, 2020.[][2] At the March 20, 2019 hearing, Megan Olmo, a Community Umbrella Agency [(CUA)] social worker testified that Mother's [] case plan objectives were as follows: (1) attend visitation with Child; (2) [obtain] housing; (3) [obtain] employment; (4) [attend] parenting classes; (5) [receive] domestic violence [training]; [] (6) attend the Clinical Evaluation Unit [(CEU)] for a dual diagnosis assessment; and (7) complete a Parenting Capacity Evaluation [(PCE)]. Regarding Mother's compliance with her objectives, Ms. Olmo testified that Mother never completed a dual diagnoses assessment at the CEU. She additionally stated that Mother attempted to participate in drug treatment at the Wedge [Medical Center]; however, she never attended the intake appointment. Ms. Olmo also testified that Mother never completed a PCE or any

---

Mother's home was covered in dog feces, that Mother seemed detached from Child, that Mother did not feed Child regularly, and that there was active domestic violence in Mother's relationship. *See* Petition for Goal Change to Adoption, 10/30/18, at 11.

[2] The trial court appointed Edelina Schuman, Esquire, as guardian *ad litem* for Child. William Rice, Esquire, is Child's legal counsel. *See* 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and *In re K.R.*, 200 A.3d 969, 984 (Pa. Super. 2018) (en banc) (same) *but see In Re: T.S., E.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

programs at [the Achieving Reunification Center]. Additionally, Ms. Olmo stated that Mother did not have adequate housing. With respect to visitation, Ms. Olmo testified that Mother attended approximately half of the offered supervised visits with Child throughout the life of the case. She further specified that Mother had not visited with [] Child for over a year at the time of the hearing.

With respect to [] Child, Ms. Olmo indicated that the foster parent is the one who meets her needs. Specifically, [] Child looks to her foster mother to meet her daily medical and emotional needs, and for care and comfort. Additionally, Ms. Olmo stated that [] Child's primary caregiver bond is with her foster mother, who [] Child calls "mom." Ms. Olmo also indicated that it would be in the best interest of [] Child to terminate the parental rights of Mother. Additionally, she testified that terminating Mother's parental rights would not cause [] Child to suffer any irreparable harm.

Mother also testified at the March 20, 2019 hearing. She stated that she had been visiting [] Child as arranged by the foster parent, despite th[e c]ourt's order requiring Mother to attend supervised visits at the CUA agency. Mother stated that she completed treatment at the Wedge [Medical Center] in 2017. Additionally, Mother stated that she completed a parents' education and support group through Parent Action Network and nine sessions at Sister Circle Lifeline Support Group, Women in Transition. Mother's counsel subsequently requested a continuance in order to subpoena the necessary witnesses, which th[e c]ourt granted.

On November 12, 2020, th[e c]ourt conducted the conclusion of the bifurcated combined TPR hearing. At the hearing, Mother testified that she obtained an apartment in April 2019[,] and is currently residing there. Mother testified that she completed an anger management class in 2017[, a] parents' education and support group through Parent Action Network[, and] an outpatient program at Wedge Medical Center. Regarding visitation, Mother stated that she communicates with Child via virtual visits but did not specify the frequency of the visits. Additionally, Mother testified that she is unemployed but receives [social security income].

Paige Wegener testified that she is employed by Turning Points for Children and has met with Mother approximately once per week since May 2019. Ms. Wegener testified that Mother currently

resides in a studio apartment. Additionally, Ms. Wegener stated that Mother has been able to work on acquisition skills and is attending therapy.

Trial Court Opinion, 1/7/21, at 1-4.

Following the November 12, 2020 hearing, the court terminated Mother's parental rights to Child under sections 2511(a), (2), (5), and (8) of the Adoption Act,[3] finding, in accordance with section 2511(b), that such termination best serves the developmental, physical, and emotional needs and welfare of Child. *See* Order, 11/12/20, at 1. On December 8, 2020, Mother timely appealed to this Court. Both Mother and the trial court have complied with Pa.R.A.P. 1925. Mother raises the following issues for our review:

1. Whether the trial court committed reversible error[] when it involuntarily terminated [M]other's parental rights where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, [23 Pa.C.S.A. §§ 2511(1), (2), (5), and (8)].

2. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of [Child] as required by the [A]doption [A]ct, [23 Pa.C.S.A. § 2511(b)].

3. Whether the trial court erred because the evidence was overwhelming and undisputed that [M]other demonstrated a genuine interest and sincere[,] persistent[,] and unrelenting effort to maintain a parent-child relationship with [Child].

Brief of Appellant, at 4.

_____

[3] 23 Pa.C.S.A. §§ 2101-2938.

- 4 -

Our standard of review in cases involving the termination of parental rights is well-settled:

> [It] requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision [] should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

The termination of parental rights is governed by section 2511 of the Adoption Act, which requires a two-step analysis. First, the party seeking termination must prove by clear and convincing evidence that the parent's conduct meets at least one of the grounds for termination set forth in section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). This requires evidence "so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1191, 1201 (Pa. Super. 2000) (en banc). If and only if grounds for termination are established under subsection (a) does a court then determine whether termination would be in the best interest of the child, considering his or her developmental, physical, and emotional

needs and welfare, pursuant to subsection (b). *See In re Adoption of S.P.*, 47 A.3d 817, 827-30 (Pa. 2012).

Pursuant to section 2511(a)(1), the rights of a parent may be involuntarily terminated after a petition has been filed if "[t]he parent[,] by conduct continuing for a period of at least six months immediately preceding the filing of the petition[,] has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child.
> . . .
> This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
> . . .
> **Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with the child's physical and emotional needs.**

*In re Z.P.*, 994 A.2d 1108, 1118-19 (Pa. Super. 2010) (emphasis added).

In applying section 2511(a)(1), we consider the entire background of the case, rather than focusing merely on the six months prior to the petition for termination being filed. *See id.* at 1117; *but see* 23 Pa.C.S.A. § 2511(b) (for petitions filed under section 2511(a)(1), court shall not consider any

efforts to remedy conditions described therein that were initiated after petition was filed).

Instantly, Mother argues the court erred in terminating her parental rights under section 2511(a)(1) where "[e]vidence elicited at [both hearings] clearly shows that [she] did not demonstrate a settled purpose of relinquishing her parental claim to [] Child."  Brief of Appellant, at 12.  In support of her argument, Mother notes, without any citations to the record, that she:  (1) "completed her required treatment[] and required classes" prior to March 20, 2019; and (2) "testified that she was regularly arranging visits with [] Child through [] Child's current foster parent."  *Id.*[4]

Here, Child was committed to DHS' custody in October 2015, when she was just six weeks old.  Since that time, for over three years prior to the filing of the petition, Mother failed to perform any parental duties for Child or provide for Child's physical, emotional, or developmental needs.  CUA social worker Megan Olmo testified that, at the time of the termination hearing, Mother had failed to complete any of her reunification objectives:  she did not obtain stable housing, attend her parenting capacity evaluation, complete a dual diagnosis program, or complete programs for parenting, housing,

---

[4] Mother also notes that her actions "[f]ollowing the March 20, 2019 [h]earing . . . further serve to show her desire to perform parental duties and reunify with [] Child."  *See* Brief of Appellant, at 12.  However, the Adoption Act is clear that, "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6)[,] or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."  23 Pa.C.S.A. § 2511(b).

employment, and domestic violence at the Achieving Reunification Center. *See* N.T. Termination Hearing, 3/20/19 (N.T. Vol. I), at 9-12. Most importantly, Mother did not make herself available for half of her supervised visits with Child, never sent Child any cards or gifts, and did not see Child at all in the year preceding the filing of the petition for termination. *Id.* at 5, 13, 25. Although Mother did testify that she arranges visits with Child through Child's foster mother, Mother could not specify the frequency or quality of those visits, which would have been in violation of the trial court's order to attend supervised visits at CUA, and she offered no corroborating evidence that the visits ever occurred. *See id.* at 32-32; *see also* N.T. Termination Hearing, 11/12/20 (N.T. Vol. II), at 13-14. Similarly, Mother could not specify the frequency of her FaceTime calls with Child, but admitted that they were of low quality and mostly consisted of Mother watching Child play on her tablet. *Id.*

Under these circumstances, we find that the record supports the trial court's finding that termination was proper pursuant to section 2511(a)(1) where, for a period of at least six months prior to the filing of the petition, Mother evidenced a settled purpose to relinquish a parental claim to Child or refused or failed to perform parental duties. *See In re Z.P.*, *supra* at 1118-19; *see also In re K.Z.S*, 946 A.2d 753, 761 (Pa. Super. 2008) (failure to complete case plan objectives is rejection of parental duties, demonstrating "a lack of serious intent to cultivate and maintain a parent/child relationship").

While the trial court found that DHS also met its burden of proof under subsections (a)(2), (5), and (8), "we need only agree with its decision as to any one subsection in order to affirm the termination of parental rights." ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004). Accordingly, we turn to the second part of the two-step termination analysis. ***In re Adoption of S.P.***, ***supra***.

Under section 2511(b), the party seeking termination must also prove by clear and convincing evidence that termination is in the best interest of the child, with "primary consideration [given] to the developmental, physical, and emotional needs and welfare of the child." ***In re Bowman***, 647 A.2d 217, 218 (Pa. Super. 1994); 23 Pa.C.S.A. § 2511(b). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. ***In re K.S.Z***, ***supra*** at 760. The court must also consider "whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary[,] and beneficial relationship." ***Id.*** at 760. "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***In re T.S.M.***, ***supra*** at 268.

Mother argues that the trial court erred in finding that DHS met its burden of proving that termination would be in Child's best interest. Specifically, she claims that "DHS has wholly failed to prove that [] family ties do not exist between [Child] and [Mother], nor has DHS shown that the family

ties between [them] hinder [Child]." Brief of Appellant, at 18. Her claims are meritless.

Here, the record supports the trial court's findings that termination would be in the best interest of Child and would not cause any irreparable harm. DHS removed Child from Mother's care in October 2015, when Child was six weeks old. At the time of termination, Child had spent over five years outside of Mother's care in a pre-adoptive home. *See* N.T. Vol. II, at 17-21. In determining that termination would best serve the needs and welfare of Child, the trial court noted:

> The testimony demonstrated that [] Child's primary bond is with the foster parent and that **the foster parent meets** [] **Child's daily** medical, general[,] and therapeutic **needs**. There was testimony that **Child is very bonded with her foster mother** and enjoys her primary parent-child relationship with the foster mother. Significantly, [] **Child has resided with the foster mother for five years, almost her entire life, and refers to foster mother as "mom."** Additionally, . . . th[e c]ourt considered that **Mother had not been able to meet Child's emotional, physical, and developmental needs for approximately five years**[.]

Trial Court Opinion, 1/7/21, at 14 (emphasis added).

Ms. Olmo explained that Child looks to her foster mother, with whom she has lived almost her entire life, as her primary caregiver; that Child's foster home is pre-adoptive; and that Child looks to her foster mother, not Mother, to meet her medical, emotional, and other needs. Ms. Olmo also testified that Child does not have a close bond with Mother and that terminating Mother's parental rights would not cause Child any irreparable

harm.  **See** N.T. Vol. I, at 17-20; **see also In re K.Z.S.**, **supra**, at 762-63 ("[I]n cases where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists.").

Based on the foregoing, we find that the court properly found clear and convincing evidence for termination under section 2511(b).  **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa. Super. 2006) ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.").

With regard to Mother's third issue, we find that the record belies her assertion that she "demonstrated a genuine interest and sincere[,] persistent[,] and unrelenting effort to maintain a parent-child relationship with [Child]," **see** Brief of Appellant, at 4, especially in light of her failure to attend half of her supervised visits with Child, complete case plan objectives required for reunification, or see Child at all in the year preceding the filing of the petition for termination.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/4/21

- 11 -